Susan S. **WALDEN,** Appellant,

v.

W. Julian **WALDEN,** Appellee.

Court of Appeals of Kentucky.

Oct. 6, 1972.

John W. Morgan, Allen, Duncan & Arnold, Lexington, for appellant.

Colvin P. Rouse, Rouse, Rouse & Hellard, Paul D. Rehm, Versailles, for appellee.

GARDNER, Commissioner.

Susan and Julian Walden were married in 1962. After eight years the parties decided they could no longer make a go of their marriage and Susan brought suit for divorce. They have two daughters, who were seven and five years of age at the time of the institution of the divorce proceedings.

The emphasis of the parties, especially that of Julian, was on social activities. They were members of a country club and participated in many parties at home and other places. Julian was an avid golfer and flyer. He owned his own plane. Gauged by the standard of the average couple, they were "high livers". Julian was a well-educated person with a degree in geology from Williams College located in Williamstown, Massachusetts. They were able to spend so much money on social affairs because of the generosity of Julian's parents rather than from earnings of Julian.

In addition to providing Julian with spending money, his parents gave him a 300-acre farm in Scott County and 115 shares in the Parrish-Walden Corporation whose principal asset was a 431-acre farm

in Woodford County. (The total number of shares of the corporation was 810.) Julian was provided a job with the Parrish-Walden Corporation at $600 per month plus $150 for house rent.

A divorce decree was granted and Susan was awarded custody of the children. By way of property settlement, Susan was adjudged to be entitled to $5,000. Julian was adjudged to be the owner of the farm, the 115 shares of stock, the airplane, and other items. The chancellor found the net worth of Julian to be $150,000. He was directed to pay Susan $3,500 per year for the support of her and the two children which would continue for 10 years, then would be reduced to $2,000 per year for five years. In the event of Susan's remarriage the payments would be $2,000 per year.

Susan maintains that the chancellor was clearly wrong in estimating the net worth of Julian at only $150,000, and that the support payments were woefully inadequate. She also insists that the $5,000 did not come close to restoring to her the amount of contribution she had made to the estate.

■ Without rehashing the evidence, suffice it to say we have carefully examined the record and briefs of counsel and cannot say that the findings of the chancellor are clearly erroneous insofar as the property division is concerned. Nearly all of the assets were gifts from Julian's parents. Susan argues that Julian's net worth determined by the chancellor to be $150,000 is small, both because the chancellor did not place a true market value on the properties and because he did not include a reasonably expected inheritance from Julian's parents. Again there is support in the record for the chancellor's evaluation. He properly considered the prospects of inheritance in making his decision. Cf. James v. James, Ky., 248 S.W.2d 706 (1952). But the chancellor thought the probability

of Julian's inheriting the property too remote to be a factor in his determination.

■ We view with favor, however, Susan's contention that the support payments are inadequate. To arrive at a just amount for support many factors, including the financial worth and earnings of the husband-father and the standard of living the family has been accustomed to, are to be considered. At first blush we are impressed with the inadequacy of $3,500 per year for the support of a mother and two children. This is close to the poverty level established by the federal government. We have said in Robinson v. Robinson, Ky., 363 S.W.2d 111 (1962), that $20 per week, or $1,040 per year, for the support of two children is insufficient, and that decision was made in the case where the father was earning but $60 per week. But we are not dealing with poverty-level people. Susan testified, and it was not refuted, that the usual expenses of her and the two children amounted to $832 per month. Julian has earnings of $750 per month and an estate of $150,000. Julian argues that his estate is made up partly of shares in the closed-family corporation and there is no market for the shares. Nevertheless the chancellor found that his net worth was $150,000, to which finding Julian did not except. The value of his estate (from whatever source) and his earnings are factors to be considered in determining the amount of support payments. Cf. Colley v. Colley, Ky., 460 S.W.2d 821 (1970). Considering the worth of Julian's estate to be $150,000 and his annual earnings to be at least $9,000, an award of only $3,500 per year to a family used to spending many times that amount is clearly erroneous.

■ Julian contends that his motion to dismiss the appeal should be sustained because Susan's acceptance of the benefits of the judgment constituted a waiver of her right to appeal. He cites Mason v. Forrest, Ky., 332 S.W.2d 634 (1960), and Complete Auto Transit v. Louisville &

Nashville R. Co., Ky., 273 S.W.2d 385 (1954), in support of his contention. These cases are in accord with the general proposition that a person who voluntarily accepts the benefits of a judgment cannot prosecute an appeal to reverse it, but counsel have not pointed to any authority holding that acceptance of support payments forestalls an appeal. The Mason case is concerned with lump sum alimony and where satisfaction of a judgment was entered of record. In the present case we are concerned with periodic payments and where there is no satisfaction of the judgment entered of record. The Complete Auto Transit case deals with a tort judgment. It would be contrary to judicial conscience to hold that a wife and children must be without means of obtaining sustenance pending an appeal. We are in accord with Lewis v. Lewis, 219 Md. 313, 149 A.2d 403 (1959), where the court says: "We hold that, if applicable at all in a divorce case, the bar [to an appeal] cannot be raised where the benefits accruing to the wife, by reason of the award, provide necessary support until the final adjudication of the case."

Especially do we find the motion to dismiss the appeal unavailing where there is strong indication that it was agreed that acceptance of payment would not preclude the appeal. Contained in a motion by Susan, notice of which was served on Julian's counsel, to require Julian to make the alimony and child support payments on an interim basis of $291.67 while Susan's motion for reconsideration was pending is the following statement: "It is further urged that payment should be directed by the Court in conformity with the March 4, 1971 award of the Court during the pendency of plaintiff's Motion for Reconsideration and during the pendency of any possible appeal of the Court's award by either the plaintiff or defendant." In addition, Susan's counsel by affidavit states that it was agreed between him and Julian's counsel " * * * that we are going forward with the appeal and are not waiving any right of appeal acceptance of this money." Counsel for Julian refutes this statement. It is stated in 4 C.J.S. Appeal and Error § 216(3)(f), page 654:

"To justify an appellate court in dismissing an appeal on the ground that the judgment appealed from has been satisfied, or that a payment thereon has been accepted, the proof of the fact must be clear and satisfactory. If the affidavit filed by the parties leaves the fact of settlement in doubt, or the opposing affidavits directly contradict the moving affidavits as to the purpose and understanding of the parties, the appeal will not be dismissed."

Cf. Lewis v. Tilton, 62 Iowa 100, 17 N.W. 199 (1883); Plano Manuf'g Co. v. Racey, 69 Wis. 246, 34 N.W. 85 (1887).

The motion to dismiss the appeal is overruled.

That part of the judgment relative to property settlement is affirmed. The part of the judgment relative to alimony and support payments is reversed and the case remanded for a redetermination of the amounts to be paid for alimony and child support in accordance with this opinion. We believe it would be helpful if the chancellor made a separate determination of the alimony and the child support awards.

STEINFELD, C. J., and EDWARD P. HILL, Jr., MILLIKEN and NEIKIRK, JJ., concur.

REED, J., concurs in result only.

OSBORNE, J., dissents from that part of the opinion reversing part of the judgment.

PALMORE, J., not sitting.